DALE E. TAYLOR, B.J. FORE, DILLARD A. BROWN, HARVEY R. COOK, JR., THOMAS P. DEIGHTON, JAMES M. FLOYD, CATHY ANN HALL, GRANT HARROLD, MARY ROSE HART, RAYMOND HIGGINS, KENNETH D. HINSON, ALLEN C. JONES, JAMES T. MALCOLM, III, RANDY W. MARTIN, RICHARD N. OULETTE, RALPH PITTMAN, SID A. POPE, DANIEL L. POWERS, II, DARYL D. PRUITT, LISA D. ROBERTSON, RICKY E. SHEHAN, GREGORY F. SNIDER, TIMOTHY C. STOKER, ANN R. STOVER, JOAN C. SMITH, INDIVIDUALLY, AND FOR THE BENEFIT OF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. CITY OF LENOIR, A MUNICIPAL CORPORATION, BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, BODY POLITIC AND CORPORATE; O.K. BEATTY, JOHN W. BRITTE, JR., JAMES M. COOPER, RONALD E. COPLEY, CLYDE R. COOK, JR., BOB ETHERIDGE, JAMES R. HAWKINS, SHIRLEY A. HISE, WILMA M. KING, GERALD LAMB, W. EUGENE McCOMBS, WILLIAM R. McDONALD, III, DAVID G. OMSTEAD, PHILLIP M. PRESCOTT, JR., JAMES W. WISE, AS TRUSTEES; DENNIS DUCKER, AS DIRECTOR OF THE RETIREMENT SYSTEMS DIVISION, AND DEPUTY TREASURER FOR THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT RETIREMENT SYSTEM; AND THE STATE OF NORTH CAROLINA, A SOVEREIGN, DEFENDANTS

No. COA96-1485

(Filed 7 April 1998)

### Retirement § 18 (NCI4th)— law enforcement officers—transfer of retirement systems—failure to enroll

The trial court erred in a declaratory judgment action brought by present and former law enforcement officers by concluding that defendants were liable for failing to enroll plaintiffs in the Local Government Employees' Retirement System (LGERS) on or after 1 January 1986 where the trial court found that the language of N.C.G.S. § 143-166.50(b) was more explicit than that of N.C.G.S. § 128-23(g) and that the election in the latter yielded to the mandatory conversion requirement of the former. Considering the language, purpose, and history of the two statutes as well as the construction given by the Retirement Systems Division, the legislature intended the two statutes to be interpreted as follows: all law enforcement officers employed by local agencies are members of LGERS if (1) they were members of LEO prior to 1 January 1986; (2) they are employed by agencies that are already participating in LGERS; (3) or they affirmatively elect to be members of LGERS, even if their employer does not.

Appeal by defendants from order entered 24 September 1996 by Judge Claude S. Sitton in Caldwell County Superior Court. Heard in the Court of Appeals 26 August 1997.

*Kuehnert & Ayers, P.L.L.C., by Daniel A. Kuehnert, and Steven T. Aceto for plaintiffs-appellees.*

*Cannon Blair & Correll, P.A., by Edward H. Blair, Jr., for defendant-appellant City of Lenoir.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for the State of North Carolina defendants-appellants.*

TIMMONS-GOODSON, Judge.

Defendants, City of Lenoir (the City) and the Board of Trustees of the North Carolina Local Government Employees' Retirement System and its individual members or successors, Dennis Ducker, Harlan E. Boyles, and the State of North Carolina (collectively, the State defendants), appeal from an order granting summary judgment to plaintiffs, who are present and former law enforcement officers for the City, as to their claim for declaratory relief. The trial court conducted a hearing to determine plaintiffs' rights under sections 128-23(g) and 143-166.50(b) of the North Carolina General Statutes and concluded that, as a matter of law, defendants were liable to plaintiffs for failing to enroll them in the Local Government Employees' Retirement System (LGERS) on or after 1 January 1986. Having carefully considered the questions presented by this appeal, we hold that the trial court erred in interpreting and applying sections 128-23(g) and 143-166.50(b) of our General Statutes. Accordingly, we reverse the order of the trial court.

Plaintiffs are law enforcement officers who are currently employed by the City or who were in the City's employ on 1 January 1986, the effective date of sections 128-23(g) and 143-166.50(b) of the General Statutes. Following a majority vote of its employees, the City applied for participation in LGERS and, on 1 July 1995, became a participating employer in the retirement program. Upon participation, the City transferred the assets of its then-existing pension plan to LGERS, pursuant to North Carolina General Statutes section 128-25. The City, however, did not enroll any of its law enforcement officers in LGERS until the filing of this action.

Plaintiffs filed this action against the City on 19 August 1992 seeking declaratory relief determining their rights under sections 128-23(g) and 143-166.50(b). Additionally, plaintiffs sought damages against the City, claiming that the City improperly failed to enroll

them, and others similarly situated, in LGERS as of 1 January 1986. Plaintiffs later amended their complaint to add the State defendants, each of which is, in some way, responsible for administering LGERS. On 31 August 1992, the Caldwell County Superior Court entered an order granting plaintiffs class certification, and, pursuant to Rule 2.1 of the Superior and District Court Rules of Practice, the Chief Justice of the North Carolina Supreme Court designated this action as an "exceptional case." This case was then assigned to the Honorable Claude S. Sitton, Senior Resident Judge for the Superior Court of Caldwell County, North Carolina.

Plaintiffs and the City entered into stipulations regarding the procedure for litigating the issues involved in this case and, thereby, agreed that this action would be tried in three phases. Phase I gave rise to the present appeal. In Phase I, the issue to be decided was whether, under sections 128-23(g) and 143-166.50(b) of the General Statutes, plaintiffs were entitled to automatic enrollment in LGERS as of 1 January 1986. On 9 September 1996, the trial court conducted a hearing as to Phase I. At the hearing, plaintiffs argued that the language of section 143-166.50(b) was more specific than that of section 128-23(g) and was, therefore, controlling. Plaintiffs maintained that, as a consequence, the City had an affirmative obligation to enroll its law enforcement officers in LGERS as of 1 January 1986.

After considering all of the evidence, the trial court entered a judgment on 24 September 1996 in favor of plaintiffs on the issue of statutory construction. The trial court ruled that, as a matter of law, the City was liable to plaintiffs, under section 143-166.50(b), for failing to enroll them in LGERS as of 1 January 1986. In rendering its decision, the trial court found that the language of section 143-166.50(b) was more explicit than that of section 128-23(g) and that the latter section was "out of sync" with the rest of the retirement statute. The trial court, therefore, held that the provision for converting to LGERS by election contained in section 128-23(g) yielded to what the trial court determined to be a mandatory conversion requirement contained in section 143-166.50(b). The City and the State defendants (collectively, defendants) appeal.

---

On appeal, defendants assert numerous assignments of error. The threshold issue for our review, however, is whether the trial court erred in interpreting and applying the pro-visions of North Carolina General Statutes sections 128-23(g) and 143-166.50(b). The several

other assignments of error raise questions that are subordinate to this one, and those questions will be addressed only as the disposition of the threshold issue requires.

Defendants contend that the trial court erred in construing sections 128-23(g) and 143-166.50(b) so as to impose an affirmative obligation on the City to enroll all of its law enforcement officers in LGERS as of 1 January 1986. Defendants argue specifically that the trial court's interpretation contravenes well-established tenets of statutory construction. This argument has merit.

As a principle of statutory construction, it is well-settled that the intent of the legislature controls when interpreting the provisions of a statute. *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 443 (1983). To ascertain legislative intent, the "courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *Id.* at 210, 306 S.E.2d at 444. " 'Other *indicia* considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption[.]' " *County of Lenoir v. Moore*, 114 N.C. App. 110, 115, 441 S.E.2d 589, 592 (1994) (quoting *In Re Banks*, 295 N.C. 236, 239-40, 244 S.E.2d 386, 389 (1978)), *aff'd*, 340 N.C. 104, 455 S.E.2d 158 (1995).

The General Assembly established LGERS in 1939, "for the purpose of providing retirement allowances and other benefits . . . for employees of those counties, cities and towns or other eligible employers *participating* in [it]." N.C. Gen. Stat. § 128-22 (1995) (emphasis added). When LGERS was instituted, local government entities were not required to participate in the program. Rather, participation occurred only at the election of the employer, upon a vote to participate by a majority of its employees. *See* N.C. Gen. Stat. § 128-23(a),(b),(c) (1995). Once an employer elected to participate, all of its employees became members of LGERS, unless they individually opted out. *See* N.C. Gen. Stat. § 128-24(1),(2) (1995)).

At the time LGERS was implemented, North Carolina law enforcement officers, whether employed by the State or a unit of local government, were eligible for membership in a retirement system known as the Law Enforcement Officers' Retirement System (LEO). *See generally* N.C. Gen. Stat. Chapter 143, Article 12 (repealed by 1985 N.C. Sess. Laws ch. 479, § 196(t)). As with LGERS, membership in LEO was optional. Law enforcement officers enrolled in LEO individually, and, once they became LEO members, they could not also be active-contributing members of LGERS or the Teachers' and

State Employees' Retirement System. *See* N.C. Gen. Stat. § 143-166(d) (repealed by 1985 N.C. Sess. Laws ch. 479, § 196(t)) (allowing transfers from LGERS to LEO). Then, effective 1 January 1986, the General Assembly dissolved LEO by enacting legislation that transferred all State-employed members of LEO into the Teachers' and State Employees' Retirement System. *See* N.C. Gen. Stat. § 143-166.30 (1996). At the same time, the legislature transferred all locally-employed LEO members, such as the City's law enforcement officers, into LGERS. *See* N.C. Gen. Stat. § 143-166.50 (Cum. Supp. 1997). With this historical perspective in mind, we turn now to the particulars of defendants' arguments.

First, defendants take issue with the trial court's conclusion that the language of section 143-166.50(b) is more specific than that of section 128-23(g) and that section 143-166.50(b) is, therefore, mandatory and controlling as to any conflict that may exist between the two statutes. Defendants submit, instead, that section 128-23(g) is the more specific statute, because it speaks specifically to law enforcement officers who are employed by local government entities that are non-participants in LGERS. We agree.

When multiple statutes address a single matter or subject, they must be construed together, in pari materia, to determine the legislature's intent. *Whittington v. N.C. Dept. of Human Resources*, 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990). Statutes in pari materia must be harmonized, "to give effect, if possible, to all provisions without destroying the meaning of the statutes involved." *Id.* Stated another way, statutes "relating to the same subject or having the same general purpose, are to be read together, as constituting one law . . . such that equal dignity and importance will be given to each." BARRON'S LAW DICTIONARY 239 (3rd ed. 1991).

North Carolina General Statutes sections 128-23(g) and 143-166.50(b) were simultaneously enacted as part of Senate Bill 410, which was introduced in 1985. Section 128-23(g) amends Chapter 128, which is entitled "Retirement Systems for Counties, Cities, and Towns." Section 128-23 is entitled "Acceptance [of LGERS] by cities, towns and counties," and subsection (g) states as follows:

Notwithstanding any other provisions of this Article, any employer who is not a participating employer and who employs law enforcement officers transferred from the Law Enforcement Officers' Retirement System to this Retirement System on

January 1, 1986, or who employs law enforcement officers electing to become members of this Retirement System on and after January 1, 1986, shall be employers participating in this Retirement System as this participation pertains to their law enforcement officers. The election of membership in this Retirement System shall be at the sole discretion of law enforcement officers of participating employers described in this subsection.

N.C. Gen. Stat. § 128-23(g) (1995).

A long-standing rule of statutory construction declares that a facially clear and unambiguous statute requires no interpretation. *Peele v. Finch*, 284 N.C. 375, 382, 200 S.E.2d 635, 640 (1973). Section 128-23(g) is such a statute. It speaks to the specific circumstance of law enforcement officers who are employed by units of local government that do not participate in LGERS. The statute states that such a unit of local government shall be considered an "employer" under LGERS to the extent that it employs law enforcement officers "transferred from the Law Enforcement Officers' Retirement System to this Retirement System on January 1, 1986," or "law enforcement officers *electing to become members of this Retirement System* on and after January 1, 1986." N.C.G.S. § 128-23(g) (emphasis added). It further provides that the "*election of membership* in this Retirement System shall be at the sole discretion of law enforcement officers of participating employers described in this subsection." *Id.* (emphasis added). Hence, inasmuch as section 128-23(g) is explicit on its face, it "must be enforced as written." *Bowers v. City of High Point*, 339 N.C. 413, 419-20, 451 S.E.2d 284, 289 (1994) (citing *Peele*, 284 N.C. at 382, 200 S.E.2d at 640).

Section 143-166.50(b), entitled "Retirement benefits for local governmental law enforcement officers," is part of an amendment to Chapter 143, which has the same title. Section 143-166.50(b) reads as follows:

On and after January 1, 1986, law-enforcement officers employed by an employer shall be members of the Local Government Employees' Retirement System, and beneficiaries who were last employed as officers by an employer, or who are surviving beneficiaries of officers last employed by an employer, are beneficiaries of the Local Governmental Employees' Retirement System and paid in benefit amounts then in effect. All members of the Law-Enforcement Officers' Retirement System last employed and

paid by an employer are members of the Local Retirement System.

N.C.G.S. § 143-166.50(b). For purposes of section 143-166.50, an employer is defined as a "county, city, town or other political subdivision of the State," unless the context plainly requires a different meaning. N.C. Gen. Stat. § 143-166.50(a)(2) (Cum. Supp. 1997).

At first glance, sections 128-23(g) and 143-166.50(b) appear to conflict. However, in our effort to discern the meaning of these statutes, we must "presume that the legislature acted with care and deliberation," *Bowers*, 339 N.C. at 420, 451 S.E.2d at 289 (citing *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970)), and that it did not intend to enact legislation that operates at cross-purposes. Therefore, "if a strict literal interpretation of the language of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded." *In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978).

The trial court focused on the following language of section 143-166.50(b) in concluding that it was more specific than section 128-23(g): "On and after January 1, 1986, law enforcement officers employed by an employer *shall* be members of the Local Government Employees' Retirement System[.]" N.C.G.S. § 143-166.50(b) (emphasis added). The trial court reasoned that the General Assembly's use of the word "shall" indicated an intent to require mandatory enrollment. However, we do not believe the legislature intended this language to operate as a directive. Instead, the historical context discussed above leads us to conclude that this provision describes the result of action already taken by the legislature in consolidating LEO with LGERS. Indeed, substantially identical language is used in North Carolina General Statutes section 143-166.30(b), which provides for the "consolidation" between LEO and the Teachers' and State Employees' Retirement System. *See* N.C.G.S. § 143-166.30(b). Thus, we interpret section 143-166.50(b) to mean that upon the effective date of the consolidation, January 1, 1986, law enforcement officers who were previously members of LEO became members of LGERS. Since section 143-166.50(b) speaks broadly about membership of local law enforcement officers in LGERS, we deem it to be the more general provision.

Our Supreme Court has stated:

"Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute[.]"

*Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966) (quoting 82 C.J.S. *General and Specific Statutes* § 369 (1953)). In the case *sub judice*, the trial court determined that the election provision in section 128-23(g) was merely one means of complying with the legislative mandate of section 143-166.50(b) requiring uniform benefits and participation by locally-employed law enforcement officers. The court further concluded that section 128-23 provided a means for such officers to "opt out" of LGERS. By this construction, the court ignores, and essentially rewrites, the plain language of section 128-23(g). Not only does the court disregard the legislature's clear directive that "[t]he election of membership . . . be at the sole discretion of law enforcement officers of participating employers," it transforms an affirmative election requirement ("electing to become members") into a negative election requirement ("electing *not* to become members"). Therefore, we must reject the trial court's construction of section 128-23(g), as it does violence to the plain language of the statute.

From our review of the language, purpose, and history of sections 123-28(g) and 143-166.50(b), we conclude that the legislature intended the following construction of the two provisions: All law enforcement officers employed by local agencies are members of LGERS if (1) they were members of LEO prior to 1 January 1986; (2) they are employed by agencies that are already participating in LGERS; or (3) they affirmatively elect to be members of LGERS, even though their employer does not participate in LGERS.

The construction given sections 128-23(g) and 143-166.50(b) by the Retirement Systems Division further supports our interpretation. While it is not controlling, the construction given a statute by the agency charged with administering it is relevant evidence of the statute's meaning. *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E.2d 324 (1978). As our Supreme Court has held,

"The construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration, especially if such construction has been made by the highest officers in the executive department of the Government or has been observed and acted upon for many years; and such construction should not be disregarded or overturned unless it is clearly erroneous."

*Gill v. Commissioners*, 160 N.C. 144, 153, 76 S.E. 203, 208 (1912) (citation omitted); *see also In re Vanderbilt University*, 252 N.C. 743, 747, 114 S.E.2d 655, 658 (1960) (stating that "[o]rdinarily, the interpretation given to the provisions of our tax statutes by the Commissioner of Revenue will be held to be *prima facie* correct and such interpretation will be given due and careful consideration by this Court").

In the instant case, defendants presented, as evidence of the legislature's intent, a statement from the Director of the Retirement Systems Division explaining the agency's construction of sections 123-28(g) and 143-166.50(b) as it relates to plaintiffs. The statement read as follows:

It is our position, and that of the Attorney General, that the provisions of G.S. 128-23(g) is [sic] controlling in the case of the City of Lenoir and other similarly situated cases. It is our position that the provisions of G.S. 143-166.50(b) cover members and beneficiaries transferred from the former Law-Enforcement Officers' Retirement System under Chapter 479, Section 196, of the 1985 Session Laws of the General Assembly.

This construction deserves "due and careful consideration," and we find it to be instructive regarding the legislature's intent. We hold, therefore, that the trial court erred in interpreting and applying sections 123-28(g) and 143-166.50(b) of the North Carolina General Statutes. Accordingly, we reverse the trial court's order concluding that, as a matter of law, defendants are liable to plaintiffs for failing to enroll them in LGERS as of 1 January 1986.

At the Phase I hearing, the trial court also entertained a motion by the City to dismiss plaintiffs' claim for attorneys fees. Plaintiffs argued that they were entitled to attorneys fees under the Common Fund Doctrine. The trial court concluded that, as a matter of law, plaintiffs are not entitled to attorneys fees against the City pursuant to the Common Fund Doctrine or any other legal theory. Plaintiffs assign error to this ruling. However, in light of our holding regarding

the matter of statutory construction, we need not address the issue of attorneys fees, as it is moot. Likewise, we need not address the remaining arguments of defendants.

For the foregoing reasons, we reverse the order of the trial court and remand for such further proceedings as are consistent with this opinion.

Reverse and remand.

Judges EAGLES and MARTIN, John C., concur.