DALE E. TAYLOR, B. J. FORE; DILLARD A. BROWN, HARVEY R. COOK, JR., THOMAS P. DEIGHTON, JAMES M. FLOYD, CATHY ANN HALL, GRANT HAROLD, MARY ROSE HART, RAYMOND HIGGINS, KENNETH D. HINSON, ALLEN C. JONES, JAMES T. MALCOLM, III, RANDY W. MARTIN, RICHARD N. OULETTE, RALPH PITTMAN, SID A. POPE, DANIEL L. POWERS, II, DARYL D. PRUITT, LISA D. ROBERTSON, RICKY E. SHEHAN, GREGORY F. SNIDER, TIMOTHY C. STOKER, ANN R. STOVER, JOAN C. SMITH, INDIVIDUALLY, AND FOR THE BENEFIT OF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS V. CITY OF LENOIR, A MUNICIPAL CORPORATION; BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, BODY POLITIC AND CORPORATE; O.K. BEATTY, JOHN W. BRITTE, JR., JAMES M. COOPER, RONALD E. COPLEY, CLYDE R. COOK, JR., BOB ETHERIDGE, JAMES R. HAWKINS, SHIRLEY A. HISE, WILMA M. KING, GERALD LAMB, W. EUGENE McCOMBS, WILLIAM R. McDONALD, III, DAVID G. OMSTEAD, PHILLIP M. PRESCOTT, JR., JAMES W. WISE, AS TRUSTEES; DENNIS DUCKER, AS DIRECTOR OF THE RETIREMENT SYSTEMS DIVISION, AND DEPUTY TREASURER FOR THE STATE OF NORTH CAROLINA; HARLAN E. BOYLES, AS TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT RETIREMENT SYSTEM; AND THE STATE OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE, DEFENDANTS

No. COA99-1228-3

(Filed 15 January 2002)

Class Actions; Costs— attorney fees—common fund doctrine— benefits from settlement

The trial court correctly limited an award of attorney fees to a court-approved settlement in a class-action involving the retirement of law enforcement officers where defendant-city converted from a local plan to the North Carolina Local Government Retirement System (LGERS) while the litigation was pending, not all of the members of the class became enrolled in LGERS, the city agreed to pay $96,000 to those members, and attorney fees were awarded only from that amount as opposed to a "common fund" representing the increased benefits received from the plaintiffs who became enrolled in LGERS. No award of attorney fees may be made pursuant to the common fund doctrine where a lawsuit brings about a voluntary change in a defendant's conduct with financial benefits to certain class members without the merits being determined. Attorney fees may be awarded only from monies obtained as a result of a formal judgment or a court-approved settlement, the common fund doctrine applies when the party seeking the award is the prevailing party in a successful lawsuit, and the court must have control over a pool of money in order to award attorney fees from that pool.

Judge WALKER concurring.

TAYLOR v. CITY OF LENOIR

[148 N.C. App. 269 (2002)]

Appeal by plaintiffs Dale E. Taylor, B. J. Fore, Dillard A. Brown, the Estate of James Floyd, Raymond Higgins, Thomas P. Deighton, and Ricky E. Shehan, from a class action final settlement order entered 5 March 1999 by Judge Claude S. Sitton in Caldwell County Superior Court. Originally heard in the Court of Appeals on 23 August 2000. An opinion was filed 17 October 2000, *Taylor v. City of Lenoir*, 140 N.C. App. 337, 536 S.E.2d 848 (2000), but was superceded on rehearing by a second opinion filed 2 January 2001, *Taylor v. City of Lenoir*, 141 N.C. App. 660, 542 S.E.2d 222 (2001). The case was appealed and, by order of the North Carolina Supreme Court on 20 July 2001, the second opinion was vacated and the case was remanded to the Court of Appeals for reconsideration. *Taylor v. City of Lenoir*, 353 N.C. 695, 550 S.E.2d 141 (2001). Reheard without additional briefing or oral arguments.

*Kuehnert Bellas & Bellas, PLLC, by Daniel A. Kuehnert and Steven T. Aceto, for plaintiff-appellants.*

*Wilson, Palmer, Lackey & Rohr, P.A., by David S. Lackey, for plaintiff-appellee Derek K. Poarch; Todd, Vanderbloemen, Brady & LeClair, P.A., by Bruce W. Vanderbloemen, for plaintiff-appellees Frank M. Hicks, Jr., Sid A. Pope, Tim Stoker, Sharon Cook Poarch and Arnold Dula; Potter, McCarl & Whisnant, P.A., by Lucy R. McCarl and Steve B. Potter, for plaintiff-appellees Jack Warlick, Jim Higgins, Mike Phillips, Gary Clark, Harold Brewer, Ronda Watts, Helen Gallardo and Michael Wayne Sutton.*

*Groome, Tuttle, Pike & Blair, by Edward H. Blair, Jr., for defendant-appellee City of Lenoir.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for defendant-appellees Board of Trustees of the North Carolina Local Government Employees' Retirement System and its individually named members or their successors, Jack W. Pruitt (Successor to Dennis Ducker), Harlan E. Boyles, and the State of North Carolina.*

HUNTER, Judge.

Plaintiffs' class counsel ("class counsel") appeal from a "Class Action Final Settlement Order" granting in part and denying in part their "Verified Petition/Request for Attorneys' Fees" based upon the "common fund doctrine." We affirm.

**TAYLOR v. CITY OF LENOIR**

[148 N.C. App. 269 (2002)]

## I. Facts and Procedural History

Plaintiffs herein are law enforcement officers who are currently employed by the City of Lenoir ("the City") or who were in the City's employ as of 1 January 1986. On 17 November 1992, plaintiffs filed a "Revised Complaint" against the City, the Board of Trustees of the North Carolina Local Government Employees' Retirement System and its individual members or successors, Dennis Ducker, Harlan E. Boyles, and the State of North Carolina (collectively "the State defendants"). The named plaintiffs alleged that the City had "an affirmative statutory duty" to enroll them, and others similarly situated, in the Local Government Employees' Retirement System ("LGERS") as of 1 January 1986, and that the City had improperly failed to enroll them in LGERS and had, instead, offered them enrollment only in the City of Lenoir Pension Plan. Plaintiffs also alleged, among other things, that the City had failed to inform plaintiffs of their rights to voluntarily elect to enroll in LGERS on an individual basis, and that in some cases the City had impermissibly denied requests by individual plaintiffs to enroll in LGERS. Plaintiffs sought declaratory relief determining their rights pursuant to the applicable statutes. Additionally, plaintiffs sought damages against the City for accrued benefits to which plaintiffs would have been entitled had they been enrolled in LGERS. During the course of this litigation, plaintiffs and class counsel agreed by stipulation not to seek to recover damages or attorney's fees from the State defendants.

While the action was pending before the trial court, and following a majority vote of its employees, the City applied for participation in LGERS and, on 1 July 1995, converted its retirement plan to LGERS ("the 1995 conversion") and transferred the total assets of its then-existing pension plan ($5,183,600.90) to LGERS. As a result of the 1995 conversion, approximately sixty-two members of the plaintiff class became enrolled in LGERS. In this appeal, class counsel seek attorney's fees from the increased retirement benefits that these sixty-two plaintiffs will receive as a result of becoming enrolled in LGERS in 1995. Also, between the filing of the lawsuit in 1992 and the 1995 conversion, a small number of officers were enrolled in LGERS by the City. The remaining plaintiffs, approximately thirty-five, were not enrolled in LGERS either prior to 1995 or as a result of the 1995 conversion.

On 21 August 1996, plaintiffs and the City entered into stipulations regarding the procedure for litigating the issues involved in this case and, thereby, agreed that this action would be tried in three

phases. In Phase I, the court was to determine "all legal issues of declaratory relief" pertaining to the plaintiff class generally. If the court concluded, based upon a determination of the legal issues, that any of the class plaintiffs might be entitled to monetary or other relief, the trial would proceed to Phase II. In Phase II, individual claimants would be entitled to "present evidence pertaining to such individual's particular assertion of rights, claims or other entitlement against the City of Lenoir based upon the general declaratory relief as shall have been determined by the Court in Phase I of the trail [sic]." After considering such evidence, the court would then determine which individual claimants, if any, would be entitled to some award of damages or other monetary relief. Finally, Phase III of the trial would be conducted in order for the court to determine what amounts of damages or other monetary relief would be awarded to these individual plaintiff class members.

At the conclusion of Phase I of the trial, the trial court entered a judgment in favor of plaintiffs. The trial court ruled that, as a matter of law, the City had a statutorily-imposed, affirmative duty to enroll its law enforcement officers in LGERS as of 1 January 1986. The court further ruled that the City was liable to plaintiffs for any damages resulting from the City's failure to enroll them in LGERS as of 1 January 1986. The trial court also ruled as a matter of law that plaintiffs were not entitled to attorney's fees against the City pursuant to the common fund doctrine. The City and the State defendants appealed to this Court.

In an opinion filed 7 April 1998, we reversed the trial court's judgment and remanded for further proceedings. *Taylor v. City of Lenoir*, 129 N.C. App. 174, 497 S.E.2d 715 (1998) *("Taylor I")*. We stated:

We hold, therefore, that the trial court erred in interpreting and applying sections 123-28(g) and 143-166.50(b) of the North Carolina General Statutes. Accordingly, we reverse the trial court's order concluding that, as a matter of law, defendants are liable to plaintiffs for failing to enroll them in LGERS as of 1 January 1986.

*Id.* at 182, 497 S.E.2d at 721. In that opinion, this Court also briefly addressed plaintiffs' argument that they were entitled to attorney's fees under the common fund doctrine, stating:

The trial court concluded that, as a matter of law, plaintiffs are not entitled to attorneys fees against the City pursuant to the

## TAYLOR v. CITY OF LENOIR

[148 N.C. App. 269 (2002)]

Common Fund Doctrine or any other legal theory. Plaintiffs assign error to this ruling. However, in light of our holding regarding the matter of statutory construction, we need not address the issue of attorneys fees, as it is moot.

*Id.* at 182-83, 497 S.E.2d at 721.

This Court's reversal of the trial court's judgment was only a partial resolution of plaintiffs' various claims. Although we held that the State defendants were not statutorily obligated to have automatically enrolled plaintiffs in LGERS as of 1 January 1986, certain allegations in plaintiffs' complaint remained to be adjudicated, including, for example, the allegation that certain plaintiffs, who had requested voluntary enrollment in LGERS on an individual basis after 1986, had been denied enrollment by the City. Thus, approximately three weeks after our opinion was filed, the parties convened before the trial court to discuss, in light of this Court's opinion, how best to proceed with the litigation. The parties agreed that the trial would resume on 10 August 1998.

However, before the trial resumed, the parties entered into a "Recommended Settlement" agreement, tentatively approved by the trial court on 19 August 1998. This document states that the purpose of the settlement was "to provide cash benefits [$96,000.00] in lieu of actual State Retirement benefits to those approximately 35 remaining class members" who were still not enrolled in LGERS following the 1995 conversion. On the same day, class counsel filed a "Verified Petition/Request for Attorneys' Fees Pursuant to Common Fund Doctrine." Specifically, class counsel requested that the trial court set aside twenty-five to forty percent of the financial benefits produced as a result of the litigation, including both (1) the monies directly resulting from the settlement ($96,000.00), and (2) the increased retirement benefits that the sixty-two class members, who received full LGERS enrollment as a result of the 1995 conversion, would receive over time (which amount, class counsel contended, was equal to a present value of between $2,100,000.00 and $2,850,000.00). In a "Supplemental Petition for Attorneys' Fees" filed on 4 September 1998, class counsel acknowledged that, as to the increased retirement benefits to certain plaintiffs as a result of the 1995 conversion, they sought attorney's fees "in the form of a reduction of benefits due Plaintiffs' class members," as opposed to seeking attorney's fees directly from the City.

**TAYLOR v. CITY OF LENOIR**

[148 N.C. App. 269 (2002)]

Notice was provided to all class members of the proposed settlement agreement. Prior to a hearing, some of the individual class members filed objections to the petition for attorney's fees and/or notices that the class member intended to opt out of the recommended settlement. Following a hearing, the trial court entered a "Class Action Final Settlement Order." Pursuant to this order, the City agreed to pay $96,000.00 to the plaintiff class members (approximately thirty-five) who did not become enrolled in LGERS as a result of the 1995 conversion. The order states that this settlement amount constitutes "a full and complete settlement and satisfaction of any and all claims and causes of action of the members of the plaintiffs' class based upon, or arising out of, the facts and circumstances alleged in the plaintiffs' revised complaint." Thus, the City was freed from the obligation to pay any additional attorney's fees directly to plaintiffs or class counsel. The court found that the $96,000.00 constituted a "common fund" procured as a direct result of the efforts of class counsel and, as a result, awarded class counsel twenty-seven and a half percent of this amount as attorney's fees.

However, the trial court entered the following conclusion of law regarding additional attorney's fees:

> 4. The Court concludes that the plaintiff class members' interests in present and/or future LGERS benefits to be paid from or into the LGERS as [a] result of the effective July 1, 1995, conversion of the City of Lenoir Pension Plan to LGERS are not an identifiable amount of monies subject to sufficient control of this Court. The Court concludes as a matter of law, it does not exercise control over these benefits to make any disbursements from such benefits or monies, which therefore do not constitute a common fund from which this Court can order the payment of attorneys fees.

We also note that the trial court's order does not include any findings or conclusions as to the causal relationship between the filing of the lawsuit and the 1995 conversion by the City. Class counsel appeal from the trial court's order denying in part their petition for attorney's fees.

## II. Analysis

On appeal, class counsel contend that the trial court erred in awarding attorney's fees *only* from the $96,000.00 arising from the court-approved settlement. Class counsel contend they are entitled to

additional attorney's fees. Their argument can be summarized as follows: (1) that this lawsuit prompted the City to convert to LGERS in 1995; (2) that the approximately sixty-two plaintiffs who became enrolled in LGERS as a result of the 1995 conversion will now receive greater retirement benefits than they would otherwise have received had they not become enrolled in LGERS; (3) that these increased retirement benefits which these sixty-two plaintiffs will receive constitute a "common fund" created as a result of this lawsuit; (4) that class counsel are entitled to receive attorney's fees from these plaintiffs as compensation for the reasonable value of their services in bringing and maintaining this lawsuit; and (5) that, pursuant to the "common fund doctrine," such attorney's fees should be deducted from the purported common fund that has been created by this lawsuit.

At the outset, we note that class counsel have assigned error to the trial court's failure to enter findings or conclusions as to whether this lawsuit prompted the 1995 conversion, resulting in increased retirement benefits to sixty-two plaintiffs. Because we hold that class counsel are not entitled to attorney's fees from these benefits on other grounds, we need not reach the issue of whether the trial court erred in not making findings or conclusions on the issue of causation.

The common fund doctrine is well recognized in North Carolina. The doctrine "is based on an exception to the general rule that attorneys' fees may not be awarded to the prevailing party without statutory authority." *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 696, 483 S.E.2d 422, 430 (1997). Pursuant to the common fund doctrine, ". . . 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Bailey v. State of North Carolina*, 348 N.C. 130, 160, 500 S.E.2d 54, 71 (1998) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681 (1980)).

> The application for the fees may be made by the plaintiffs themselves, on the ground that they have performed a service benefiting others similarly situated. But *a plaintiff's attorney may himself present a claim to compensation and reimbursement for expenses from the fund, on the theory that he has provided or preserved a benefit—the fund itself—and that the reasonable value of his services should be borne proportionately by all plaintiffs.*

*Van Gemert v. Boeing Co.*, 590 F.2d 433, 437 (2d Cir. 1978) (emphasis added) (citations omitted), *affirmed, Boeing Co.*, 444 U.S. 472, 62 L. Ed. 2d 676 (1980); *see also, Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, 487 F.2d 161, 165-66 (3d Cir. 1973). Here, class counsel seek attorney's fees pursuant to this latter type of common fund doctrine claim.

However, two facts distinguish this case from the three principle North Carolina common fund doctrine cases upon which class counsel substantially rely. *See Bailey*, 348 N.C. 130, 500 S.E.2d 54; *Faulkenbury*, 345 N.C. 683, 483 S.E.2d 422; *Horner v. Chamber of Commerce*, 236 N.C. 96, 72 S.E.2d 21 (1952). First, the particular benefits from which class counsel seek attorney's fees (the increased retirement benefits to those sixty-two plaintiffs who became enrolled in LGERS in 1995) are *benefits arising from a "voluntary" action* taken by the City—"voluntary" in the sense that it did not occur as a result of any judicial mechanism of the trial court. The City was not obligated to convert to LGERS pursuant to any judgment or order entered by the trial court; and, unlike the $96,000.00, the benefits resulting from the City's decision to convert to LGERS in 1995 did not arise pursuant to a court-approved settlement agreement.

The second fact that sets this case apart is the fact that there has never been a determination in favor of plaintiffs as to the merits of plaintiffs' legal claims. At the conclusion of Phase I, the trial court ruled that the City had violated the statutes in question by failing to enroll plaintiffs in LGERS as of 1986. On appeal from that judgment, this Court reversed the trial court's ruling and remanded for further proceedings. *See Taylor I*, 129 N.C. App. 174, 497 S.E.2d 715. Our ruling in *Taylor I* disposed only of one of plaintiffs' claims—namely, that the City was statutorily obligated to automatically enroll plaintiffs in LGERS as of 1 January 1986. Following remand, the remainder of plaintiffs' claims were still pending and were to be adjudicated when the trial resumed. However, the merits of these remaining claims have never been determined because, before the trial resumed, the parties reached a settlement agreement.

Thus, the question presented is this: where a lawsuit, the merits of which have never been determined, brings about a voluntary change in a defendant's conduct (in the sense that the defendant's action is not undertaken pursuant to a judgment, order, or court-approved settlement), and where that change in conduct results in financial benefits for certain plaintiff class members, are the attorneys who brought and maintained the lawsuit entitled to an award of

attorney's fees from those benefits pursuant to the common fund doctrine? For the reasons that follow, we hold that no award of attorney's fees may be made under these particular circumstances.

First and foremost, our Supreme Court has consistently held that attorney's fees may only be awarded from monies that are actually "recovered" by the litigation. For example, our Supreme Court stated in *Horner*:

> [W]e conclude that where, as in the present case, on refusal of municipal authorities to act, a taxpayer successfully prosecutes an action to recover, *and does actually recover and collect,* funds of the municipality which had been expended wrongfully or misapplied, the court has implied power in the exercise of a sound discretion to make a reasonable allowance, *from the funds actually recovered,* to be used as compensation for the plaintiff taxpayer's attorney fees.

*Horner*, 236 N.C. at 101, 72 S.E.2d at 24 (emphasis added). Similarly, in *Bailey*, the Court stated that ". . . 'a litigant or a lawyer *who recovers a common fund* for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' " *Bailey*, 348 N.C. at 160, 500 S.E.2d at 71 (emphasis added) (quoting *Boeing*, 444 U.S. at 478, 62 L. Ed. 2d at 681).

Black's Law Dictionary defines "Recovery" as follows:

> In its most extensive sense, the restoration or vindication of a right existing in a person, by the formal judgment or decree of a competent court, at his instance and suit, or the obtaining, by such judgment, of some right or property which has been taken or withheld from him. . . .
>
> The obtaining of a thing by the judgment of a court, as the result of an action brought for that purpose. The amount finally collected, or the amount of judgment. . . .

Black's Law Dictionary 1276 (6th ed. 1990). Thus, attorney's fees may only be awarded from monies that are obtained as a result of a "formal judgment" or a court-approved settlement (or consent decree).

In the present case, class counsel are seeking attorney's fees specifically from the financial benefits that sixty-two plaintiffs will receive as a result of becoming enrolled in LGERS due to the 1995 conversion. These benefits have not been obtained by means of a judgment, an order, or a court-approved settlement, and, therefore,

do not constitute monies "recovered" by plaintiffs in this lawsuit. Thus, class counsel are not entitled to an award of attorney's fees from these benefits.

Similarly, and perhaps even more fundamentally, North Carolina cases involving the common fund doctrine indicate that, in order for the common fund doctrine to apply, the party seeking an award of attorney's fees must be the prevailing party, and must show that he has maintained a successful lawsuit. For example, our Supreme Court stated in *Faulkenbury* that "[t]he common-fund doctrine is based on an exception to the general rule that attorneys' fees may not be awarded *to the prevailing party* without statutory authority." *Faulkenbury*, 345 N.C. at 696, 483 S.E.2d at 430 (emphasis added). Moreover, in *Horner*, the Court stated that the common fund doctrine may be applied where a litigant "*has maintained a successful suit* for the preservation, protection, or increase of a common fund or of common property." *Horner*, 236 N.C. at 97-98, 72 S.E.2d at 22 (emphasis added) (citation omitted). Thus, to be entitled to attorney's fees from the specific benefits in question, class counsel must establish that the sixty-two plaintiffs who became enrolled in LGERS in 1995 qualify as prevailing parties in this lawsuit. *See* Alba Conte, *Attorney Fee Awards* § 1.02, at 2 (2d ed. 1993) (party seeking attorney's fees under the common fund doctrine must "demonstrate some level of success in obtaining the litigation benefits sought").

Here, we are not persuaded that the sixty-two plaintiffs in question should be considered prevailing parties for purposes of awarding attorney's fees. First, as noted above, there has been no determination as to the merits of the majority of plaintiffs' legal claims. Further, the one claim that has been ruled upon—that the City was statutorily obligated to enroll plaintiffs in LGERS in 1986—was rejected by this Court. In addition, although it is possible that this lawsuit may have had some impact upon the City's decision to convert to LGERS in 1995, the 1995 conversion was not a legally enforceable action required by judgment, or an order or a court approved settlement of the trial court. Thus, we hold that these sixty-two plaintiffs do not qualify as prevailing parties for purposes of awarding attorney's fees. *Cf. Buckhannon Home v. West Va. Dept.*, 532 U.S. 598, 149 L. Ed. 2d 855 (2001) (holding that, pursuant to federal civil rights statutes which allow award of attorney's fees to "prevailing party" only, "prevailing party" does not include party that has failed to secure either judgment on the merits or court-ordered consent decree, even where lawsuit brings about voluntary change in defendant's conduct,

because there must be some judicially sanctioned change in legal relationship between parties).

Finally, under the circumstances presented in this case, it is not at all clear that the trial court had sufficient "control" over the benefits in question to order an award of attorney's fees from these benefits. The North Carolina cases dealing with the common fund doctrine indicate that a court must have control over a pool of money in order to award attorney's fees from that pool of money. For example, in *Horner*, our Supreme Court quoted with approval the following statement: ". . . 'The right of a court of equity to subject a fund [] recovered [through an equitable class action lawsuit], *and under the control of the court*, to the reasonable costs of such creation or preservation, is well established.' " *Horner*, 236 N.C. at 99, 72 S.E.2d at 23 (emphasis added) (quoting *Shillito v. City of Spartanburg*, 214 S.C. 11, ——, 51 S.E.2d 95, 100 (1948)). Furthermore, this Court has held that one of the necessary "ingredients for application of the common fund doctrine" is that the award in question be "under the trial court's supervision and control." *Raleigh-Durham Airport Authority v. Howard*, 88 N.C. App. 207, 214, 363 S.E.2d 184, 187 (1987), *disc. review denied*, 322 N.C. 113, 367 S.E.2d 916 (1988).

Here, the benefits to some of the class plaintiffs resulting from the 1995 conversion are not the result of any judicial action by the trial court in this litigation. The trial court had no opportunity to review these benefits, or to approve or disapprove them, because the 1995 conversion was not undertaken pursuant to a settlement approved by the court. Because these benefits are the result of the City's voluntary action undertaken outside of the purview of the trial court, and because the benefits themselves were not subjected to the trial court's review or approval, we do not believe the trial court had sufficient "control" to award attorney's fees from these benefits.

In summary, we hold that, under these particular circumstances, class counsel are not entitled to an award of attorney's fees from the specific benefits in question pursuant to the common fund doctrine. Therefore, the trial court's order, granting in part and denying in part class counsel's petition for attorney's fees, is affirmed.

Affirmed.

Judge SMITH concurs.

Judge WALKER concurs in a separate opinion.

TAYLOR v. CITY OF LENOIR

[148 N.C. App. 269 (2002)]

WALKER, Judge, concurring.

I concur with the majority opinion which affirms the order of the trial court.

On 1 July 1995, the City of Lenoir converted its retirement system to LGERS. This 1995 conversion was not pursuant to a judgment, an order, nor a court-approved settlement. In 1998, this Court held that the statutes creating LGERS did not require the City to convert its retirement system to LGERS. *Taylor v. City of Lenoir*, 129 N.C. App. 174, 497 S.E.2d 715 (1998). After that decision, the parties entered into a court-approved settlement by which a total of $96,000 was paid to the plaintiff class members who did not become enrolled in LGERS as a result of the 1995 conversion. From this amount, the trial court ordered attorneys' fees paid to the plaintiffs' attorneys pursuant to the common fund doctrine. It also specifically concluded that, as to the benefits resulting from the 1995 conversion, "[the trial court] does not exercise control over these benefits to make any disbursements from such benefits or monies, which therefore do not constitute a common fund from which this Court can order the payment of attorneys['] fees."

As addressed by the majority, our Courts have held that to create a common fund, the trial court must have control over the award from which the common fund would be created. In *Raleigh-Durham Airport Authority v. Howard*, 88 N.C. App. 207, 363 S.E.2d 184 (1987), *disc. rev. denied*, 322 N.C. 113, 367 S.E.2d 916 (1988), this Court stated that one of the "ingredients for application of the common fund doctrine" is that the award from which a common fund would be created is "under the trial court's supervision and control." 88 N.C. App. at 214, 363 S.E.2d at 187.

In other cases involving the common fund doctrine in this State, the award from which the common fund was created was under the control of the trial court because the award was a judgment or order of the court. *See Bailey v. State of North Carolina*, 348 N.C. 130, 500 S.E.2d 54 (1998) (The common fund was created out of the court-ordered refund of taxes); *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997) (The common fund was created out of the court-ordered payment of actuarial value of underpayments and interest thereupon of disability benefits under the State Employees' Retirement System); *Horner v. Chamber of Commerce*, 236 N.C. 96, 72 S.E.2d 21 (1952) (The common fund was

created out of the court-ordered refund of monies); and *Raleigh-Durham Airport Authority, supra* (The common fund was created out of the condemnation award).

In the present case, the plaintiffs' attorneys seek to recover attorneys' fees from the benefits resulting from the 1995 conversion. Therefore, the 1995 conversion must be under the supervision and control of the trial court. However, there was no order, judgment, nor court-approved settlement resulting in the 1995 conversion. In 1998, this Court held that the City was not obligated to convert to LGERS, thus, precluding the plaintiff from obtaining an order requiring the City to convert. Therefore, it is clear that the trial court does not now have sufficient supervision nor control over the 1995 conversion to create a common fund out of those benefits.

If there had been a court-approved settlement in 1995 evidencing the City's commitment to convert to LGERS while preserving other issues for trial, the trial court would have control over the 1995 conversion and its resulting benefits. If that event had occurred, there is enough evidence here to convince me that a common fund could have been identified.

My prior comment, in connection with my dissent in *Taylor v. City of Lenoir*, 141 N.C. App. 660, 542 S.E.2d 222 (2001), focused on the issue of causation. I concluded there was a "common fund" created from the benefits because of the causal connection between the lawsuit filed and the 1995 conversion by the City. Upon further review of the record and the 1998 decision of this Court, I concur with the majority that the trial court did not have sufficient supervision nor control over the benefits of the 1995 conversion to create a common fund because there was no judgment, order, nor court-approved settlement at that time.