IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-207

No. COA20-350

Filed 18 May 2021

Wake County, No. 19 CVS 4245

BELMONT ASSOCIATION, INC., Plaintiff,

v.

THOMAS FARWIG, AND WIFE, RANA FARWIG AND NANCY MAINARD, Defendants.

Appeal by Defendants from order entered 3 January 2020 by Judge Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Jordan, Price, Wall, Gray, Jones & Carlton, PLLC, by Hope Derby Carmichael, Brian S. Edlin, Mollie L. Cozart, for Plaintiff-Appellee.*

*Thurman, Wilson, Boutwell & Galvin, P.A., by James P. Galvin, and Alexander W. Warner, for Defendants-Appellants.*

GORE, Judge.

¶ 1        Thomas Farwig, his wife Rana Farwig, and Nancy Mainard (collectively, "Defendants"), appeal from a trial court's order granting Belmont Association, Inc.'s ("Plaintiff's") Motion for Summary Judgment. On appeal, Defendants argue that the trial court erred in: (1) its application of N.C. Gen. Stat. § 22B-20; (2) concluding that N.C. Gen. Stat. § 22B-20(d) is applicable in this action; (3) finding and concluding

that this action involves a covenant or similar binding agreement that prohibits the location of solar panels as described in N.C. Gen. Stat. § 22B-20(b); and (4) finding and concluding that N.C. Gen. Stat. § 22B-20(c) is not applicable. We affirm the trial court's Order granting Plaintiff's Motion for Summary Judgment.

## I.    Factual and Procedural Background

¶ 2        On or about 17 December 2012, Defendants purchased Lot 42, also known as 4123 Davis Meadow Street, Raleigh, North Carolina (the "Property"), in the Belmont subdivision of Wake County. The Property is subject to a scheme of restrictive covenants through the recording of a Declaration of Protective Covenants for Belmont (the "Declaration") in December 2011. The Declaration's purpose, among other things, is to establish a general plan and scheme of development for the Belmont residential subdivision, to provide for the maintenance and upkeep of properties, to enforce the Declaration and all covenants and restrictions, and to protect the value and desirability of the properties within its jurisdiction.

¶ 3        The Declaration provides for architectural control and establishes an Architectural Review Committee ("ARC") in Article XI. Pursuant to Section 3(a) of Article XI of the Declaration:

> The [ARC] shall have the right to refuse to approve any Plans for improvements which are not, in its sole discretion, suitable for the Properties, including for any of the following: (i) lack of harmony of external design with surrounding structures and environment; and (ii) aesthetic

reasons. Each Owner acknowledges that determinations as to such matters may be subjective and opinions may vary as to the desirability and/or attractiveness of particular improvements.

An "Improvement" is defined under Article I, section (bb) of the Declaration:

as any structure and all appurtenances thereto of every kind and type and any other physical change upon, over, across, above, or under any part of the Properties . . . including any other improvement of, to, or on any portion of the Properties, including Dwellings and other structures (specifically including exterior materials, colors, size, and architectural style of same). Improvements also include . . . equipment and facilities located outside of a Dwelling[,] . . . exterior antennae, dishes and other apparatus to receive or transmit radio, television, or microwave or other signals[,] . . . poles, flags, decorative features and items attached to or on the exterior of a Dwelling[,] . . . signs located outside of a Dwelling or visible inside a Dwelling from a street or adjoining portion of the Properties, and all other exterior improvements and items used or maintained on a Lot outside of the Dwelling.

Article I, section (cc) further provides that the word:

"include" or "including" is defined as being inclusive of, but not limited to, the particular matter described, unless otherwise clearly obvious from the context.

¶ 4    On or about 5 February 2018, Defendants had solar panels installed on the roof sloping towards the front of their home without prior approval from the ARC. Five months later in July 2018, Plaintiff sent Defendants a notice of architectural violation and requested submission of an architectural request form to the ARC. In response, Defendants submitted an architectural request form on 20 July 2018 along with a

"Petition to allow solar panels on front of homes in Belmont" signed by 22 members of the community. Plaintiff sent a second notice of architectural violation on 9 August 2018.

¶ 5          On 5 September 2018, Plaintiff denied Defendants' application to install solar panels and acknowledged:

> While the ARC Guidelines do not specifically address solar panels, the ARC committee and the Board has a long standing protocol of making ARC determinations that assure that installations and improvements do not detract from the community aesthetic or property values, and usually deny or require screening of any improvement that can be seen from the street in front of the home. . . . The Declarations of the community allow the ARC the right to refuse to approve any plans or installation which, in its sole discretion, create aesthetic problems (see Article XI, sections 1-3). . . . The Board is issuing a denial of solar panels proposed in this application because the installation can be seen from the road in front of the home, and is not able to be shielded.

¶ 6          On 4 October 2018, Defendants appealed Plaintiff's denial of their application to install solar panels for failure to conform to community aesthetic guidelines. In their appeal, Defendants argued that the ARC's denial of their application violated "NC Gen. Stat. § 22B-20, which provides that an HOA may not regulate the location of rooftop solar having the effect of preventing the reasonable use of the solar system." Specifically, they argue that requiring Defendants to relocate their solar panels "to the back, north-sloping roof would significantly reduce the production of the solar

system . . . effectively increasing the cost of owning and maintaining the system beyond reasonable financial means." Defendants submitted a Shade Report along with their appeal to support the necessity of placing the solar panels on the front, south-sloping roof of their home that receives the most sunlight.

¶ 7    On 2 November 2018, Plaintiff considered the appeal and upheld its denial of Defendants' application based on a different subsection of the statute, N.C. Gen. Stat. § 22B-20(d), determining that the front facing solar panels could not be shielded and would be aesthetically unpleasing as viewed from the public street. Plaintiff demanded removal of the solar panels by 7 December 2018.

¶ 8    When the solar panels were not removed, Plaintiff sent Defendants a notice of hearing on 8 January 2019. At the hearing on 30 January 2019, Plaintiff decided to impose a fine of $50.00 per day if the solar panels were not removed after 1 March 2019. Plaintiff began imposing the fines on or about 8 March 2019, with $350.00 added to Defendants' account on that day. On or about 14 March 2019, Defendants began sending payments to Plaintiff, under protest, to cover the imposed fines and keep their Property out of foreclosure.

¶ 9    On 1 April 2019, Plaintiff filed a Claim of Lien alleging $50.00 in debt owed. Plaintiff filed its Verified Complaint on 2 April 2019 seeking (1) Injunctive Relief and (2) Collection of Fines Imposed. On 7 June 2019, Defendants filed an Answer, Counterclaim, and Motion to Dismiss asserting claims against Plaintiff for: (1)

declaratory judgment; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) slander of title; and (5) violation of N.C. Gen. Stat. § 75-1.1. On 25 July 2019, Plaintiff filed a Motion to Dismiss, Motion for Judgment on the Pleadings, and Reply to the Counterclaim. After the parties exchanged discovery, Plaintiff filed a Motion for Summary Judgment on 5 November 2019.

¶ 10 On 11 December 2019, the Honorable Graham Shirley granted Plaintiff's Motion for Summary Judgment as to Plaintiff's First Claim for Injunctive Relief and Defendants' First Counterclaim for Declaratory Judgment. In its order, the trial court ruled that: (1) "subsection (d) of N.C.G.S. §22B-20 is applicable" in this action; (2) "this action involves a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in N.C.G.S. §22B-20(b) that are visible by a person on the ground on a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces;" and (3) "subsection (c) of N.C.G.S. §22B-20 is not applicable because subsection (d) is applicable." Defendants appeal the trial court's Order granting Plaintiff's Motion for Summary Judgment.

## II.    Analysis

### A. Standard of Review

¶ 11 "Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue

as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2020). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

**B. Statutory Interpretation**

¶ 12         The trial court's interpretation of N.C. Gen. Stat. § 22B-20 is directly at issue in this action.

¶ 13         "In matters of statutory construction the task of the Court is to determine the legislative intent, and the intent is ascertained in the first instance from the plain words of the statute." *N.C. Sch. Bds. Ass'n v. Moore*, 359 N.C. 474, 488, 614 S.E.2d 504, 512 (2005) (citation and quotation marks omitted). "Moreover, we are guided by the structure of the statute and certain canons of statutory construction." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (citation omitted). "Ordinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved

usage of the language." *Dunn v. Pac. Emp'rs Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) (citation omitted). "To ascertain legislative intent, the courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *Taylor v. City of Lenoir*, 129 N.C. App. 174, 177, 497 S.E.2d 715, 718 (1998) (citation and quotation marks omitted). "Other *indicia* considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption." *Id.* at 177, 497 S.E.2d at 718 (*purgandum*).

¶ 14     We first look to the plain language of § 22B-20 to guide our review. N.C. Gen. Stat. § 22B-20 regulates deed restrictions and covenants on solar collectors, and provides in pertinent part:

> (a) The intent of the General Assembly is to protect the public health, safety, and welfare by encouraging the development and use of solar resources and by prohibiting deed restrictions, covenants, and other similar agreements that could have the ultimate effect of driving the costs of owning and maintaining a residence beyond the financial means of most owners.
>
> (b) Except as provided in subsection (d) of this section, any deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector . . . for a residential property on land subject to the deed restriction, covenant, or agreement is void and unenforceable. . . .
>
> (c) This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would regulate the location or screening of solar

collectors as described in subsection (b) of this section, provided the deed restriction, covenant, or similar binding agreement does not have the effect of preventing the reasonable use of a solar collector for a residential property. . . .

(d) This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground:

> (1) On the façade of a structure that faces areas open to common or public access;

> (2) On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces; or

> (3) Within the area set off by a line running across the façade of the structure extending to the property boundaries on either side of the façade, and those areas of common or public access faced by the structure.

N.C. Gen. Stat. § 22B-20 (2020).

¶ 15    It is Defendants' argument that the denial of their application to install solar panels violates N.C. Gen. Stat. § 22B-20(c) because Plaintiff is statutorily prohibited from preventing the reasonable use of solar collectors on their Property. While subsection (d) of § 22B-20 provides an exception and allows restrictive agreements to prevent the installation of solar panels in statutorily prescribed locations, it does not apply in this case because the Declaration does not expressly restrict or prohibit solar collectors as improvements. Further, they argue that subsection (c)'s prohibition on

interference with reasonable use should be read as superseding subsection (d)'s exception. We are unpersuaded by Defendants' overly narrow interpretation of §22B-20 and disagree that the statute should be read in nonsequential order.

It is clear from the plain language of §22B-20 that the legislature intended to encourage the use of solar collectors and prohibit agreements that could have the effect of driving up costs of owning and maintaining a residence. It is also clear that the statute presents subsection (d) after subsection (c), and these subsections do not refer to one another. However, there is a degree of ambiguity between the words, "effect of preventing" in subsection (c), and the words, "would prohibit" in subsection (d). We look to the legislative history and the circumstances surrounding the adoption of the Bill itself to ascertain legislative intent.

The first edition of Senate Bill 670 introduced by the General Assembly on 13 March 2007 did not contain the subsection (d) exemption. The second edition of Senate Bill 670 was drafted to include the subsection (d) exemption that allows for a covenant or similar agreement to prohibit the location of solar panels that are visible from the ground in specific places. In addition to introducing the subsection (d) exemption, the second edition of the Bill was recaptioned as follows:

> AN ACT TO PROVIDE THAT CITY ORDINANCES, COUNTY ORDINANCES, AND DEED RESTRICTIONS, COVENANTS, AND OTHER SIMILAR AGREEMENTS CANNOT PROHIBIT *OR HAVE THE EFFECT OF PROHIBITING* THE INSTALLATION OF SOLAR

COLLECTORS *NOT FACING PUBLIC ACCESS OR COMMON AREAS* ON DETACHED SINGLE-FAMILY RESIDENCES."

2007 N.C. Sess. Laws 520. We find the title of the Bill itself instructive when ascertaining legislative intent.

> The title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the Act. Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered.

*State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 764 (1992) (*purgandum*). While Defendants assert that a deed restriction, covenant, or similar binding agreement must expressly prohibit the installation of solar collectors under subsection (d), it is clear from the title of the Bill itself that the legislature was specifically addressing agreements that would "have the effect" of prohibiting the installation of solar collectors.

¶ 18    Here, Architectural control is established in Article XI of the Declaration and provides that the Belmont ARC has aesthetic discretion over any improvements made to properties in the community. "[I]t is the general rule that a restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith." *Boiling Spring Lakes Div. of Reeves*

*Telecom Corp. v. Coastal Servs. Corp.*, 27 N.C. App. 191, 195-96, 218 S.E.2d 476, 478-79 (1975) (citation omitted). Defendants are required to apply and receive approval before installing any improvements. Improvements are defined in the Declaration as including various structures and physical changes, but do not expressly list solar panels. However, "Include" and "Including" are also defined in the same section as "being inclusive of, but not limited to, the particular matter described."

¶ 19       While the Declaration does not expressly address solar panels, the architectural review committee has discretionary power that has an "effect of prohibiting" their installation in the statutorily specified areas. Solar panels are an "improvement" within the meaning of the Declaration, and Defendants were required to apply and receive written approval before installing them. In the ARC's denial of Defendant's appeal letter, it found that the solar panels were plainly on the roof that slopes downward toward the façade of the home facing the public and common areas, and clearly visible from the street. This is a statutorily specified location within the purview of subsection (d). Additionally, the ARC had rejected at least four other applications to install solar panels from other homeowners in the community on the same grounds that they are inconsistent with the plan and scheme of development at Belmont.

> The covenant specifically provides that the ARC is the sole arbiter of the plans and that the ARC can withhold approval for any reason, including purely aesthetic ones.

> There is no evidence or contention that the covenant was not entered into knowingly and voluntarily. Therefore, the covenant is enforceable according to its terms, at least in the absence of any evidence that the ARC acted arbitrarily or in bad faith in the exercise of its powers.

*Raintree Homeowners Ass'n v. Bleimann*, 342 N.C. 159, 163-64, 463 S.E.2d 72, 75 (1995).

¶ 20        Here, Defendants installed the solar panels first and sought approval later. Defendants are subject to the Declaration, which provides that the ARC has the sole discretion to deny the installation of improvements to their property that do not comport with aesthetics or the common scheme of development. The ARC does not appear to have acted arbitrarily or in bad faith. It exercised its powers in line with a consistent policy, and within the scope of N.C. Gen. Stat. § 22B-20(d).

## III.    Conclusion

¶ 21        We find that the trial court did not err in its application of N.C. Gen. Stat. § 22B-20. Subsection (d) of N.C. Gen. Stat. § 22B-20 is applicable in this action because the Declaration has the effect of prohibiting the installation of solar panels "[o]n a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces." § 22B-20(d). Subsection (c) is inapplicable in this case as subsection (d) acts as an exemption to the entire statute. The trial court correctly granted summary judgment for Plaintiff.

        AFFIRMED.

Judge COLLINS concurs.

Judge JACKSON dissents in a separate opinion.

JACKSON, Judge, dissenting.

Our General Assembly has banned land use restrictions that effectively prohibit the installation of solar panels on residential property—even if those restrictions do not do so expressly. The majority would hold that this statutory ban does not apply here because the restrictions in this case do not explicitly relate to solar panels. Yet this holding ignores precisely what the statutory ban forbids. By reading out of the relevant statute a situation for which the General Assembly made express provision, the majority's interpretation of the law defeats its purpose. I therefore respectfully dissent.

## I. Background

This is a case of first impression, but the facts are undisputed.

In 2007 and 2009, the General Assembly passed two laws—Session Laws 2007-279 and 2009-553—related to the validity of land use restrictions prohibiting the installation of solar panels on residential property.[1] With two noteworthy exceptions, these laws invalidate "deed restriction[s], covenant[s], or similar binding agreement[s] that run[] with the land that would prohibit . . . the installation" of solar panels on residential property, and such restrictions that "would . . . have th[is] effect[.]" N.C. Gen. Stat. § 22B-20(b) (2019). There is a specific exemption from the ban for certain multi-story condominiums, *id.*, and a general exception for restrictions

---

[1] These laws are codified in Chapter 22B of the General Statutes, which is entitled "Contracts Against Public Policy." N.C. Gen. Stat. § 22B-1 (2019), *et seq.*

on surfaces facing common areas that meet criteria specified in subsection (d) of N.C.

Gen. Stat. § 22B-20, which provides:

> This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors . . . that are visible by a person on the ground:
>
>> (1)     On the façade of a structure that faces areas open to common or public access;
>>
>> (2)     On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces; *or*
>>
>> (3)     Within the area set off by a line running across the façade of the structure extending to the property boundaries on either side of the façade, and those areas of common or public access faced by the structure.

*Id.* § 22B-20(d) (emphasis added).

¶ 25        On 9 December 2011, Buffaloe Partners I, LLC recorded a Declaration of

Protective Covenants ("Declaration") with the Wake County Register of Deeds for a

residential subdivision located in Raleigh, North Carolina, known as Belmont.  The

Declaration authorizes the Belmont Community Association, Inc., ("Plaintiff") "to

administer and enforce covenants and restrictions applicable to the [s]ubdivision[.]"

The Declaration also establishes an Architectural Review Committee ("Committee"),

which is charged with "assur[ing], insofar as is reasonable and practicable, that

improvements [to homes in Belmont] are constructed and maintained in a manner

that provides for harmony of external design[,]" and that no changes are made to homes in Belmont that would be "deleterious to the aesthetic or property values of any portion of the properties[.]" (Capitalization removed.) The Declaration contains numerous land use restrictions applicable to homes in Belmont, none of which expressly mention solar panels.

¶ 26 In February 2018, Thomas Farwig, an owner of a home in Belmont, had solar panels installed on his roof. The solar panels were installed on a portion of the roof that faces the public street in front of Mr. Farwig's home. Mr. Farwig did not request approval from Plaintiff or the Committee before the solar panels were installed.

¶ 27 In a 16 July 2018 letter, Plaintiff notified Mr. Farwig, his wife Rana Farwig, and Nancy Mainard, the other record owner of the home (collectively, "Defendants") that it considered the installation of the solar panels an "architectural violation," despite the absence of any restriction in the Declaration related to solar panels. Plaintiff requested in the letter that Defendants "complete and submit an Architectural Request form immediately." Plaintiff reiterated this request in a second letter dated 9 August 2018.

¶ 28 Defendants thereafter complied with the request and asked Plaintiff to approve the installation of the solar panels on their roof. However, Plaintiff refused. In a 5 September 2018 letter, Plaintiff explained:

> All [Architectural Review Committee ("ARC")] applications

> proposed by owners are reviewed on its [sic] visual
> aesthetic impact to the community and the lot. The
> Declarations of the community allow the ARC the right to
> refuse to approve any plans or installation which, in its sole
> discretion, create aesthetic problems (see Article XI,
> sections 1-3). This right is granted even though it is
> acknowledged (in the passage in the Declaration) that this
> may be subjective.
>
> The Board is issuing a denial of solar panels proposed in
> this application because the installation can be seen from
> the road in front of the home, and is not able to be shielded.

The 5 September 2018 denial also stated that any appeal from the decision should be

"submit[ted] in writing within 30 days," and should include "specific information

clarifying the points raised in the disapproval and justification for reconsideration of

[the] request."

¶ 29    In accordance with the terms of the denial, on 4 October 2018, Mr. Farwig

appealed and requested reconsideration of the decision. Mr. Farwig argued in his

appeal that the denial violated N.C. Gen. Stat. § 22B-20, contending that prohibiting

the installation of solar panels on the portion of his roof facing the street effectively

constituted a blanket prohibition on the installation of solar panels at his home

because shade cover over the portion of his roof not facing the street made any

installation there uneconomical. Mr. Farwig also asserted that the presence of solar

panels on the roof of a home does not decrease property values. In fact, he contended,

not only does the installation of solar panels increase property values, the extent of

the increase is not taxable in a North Carolina property tax assessment. Mr. Farwig attached documents to support these claims.

¶ 30    In a 2 November 2018 letter, Plaintiff denied Mr. Farwig's appeal. In the letter, Plaintiff reiterated that Mr. Farwig's initial application had been denied because of the location of the installation, and noted that other Belmont residents had also been denied approval of solar panel installations that would be visible from the street. Plaintiff argued in the denial that subsection (d) of N.C. Gen. Stat. § 22B-20 authorized it "to prohibit solar panels . . . on a roof surface that slopes downward towards areas open to public access that the dwelling faces." In conclusion, the letter stated that Plaintiff "would favorably consider an application for solar panels that were installed on a rear facing roof."

¶ 31    The denial of Mr. Farwig's appeal gave Defendants a deadline of 7 December 2018 to remove the solar panels. When they did not comply, Plaintiff initiated the present action. After the parties had conducted written discovery, Plaintiff moved for summary judgment.

¶ 32    The trial court granted the motion in a 3 January 2020 order in which it essentially adopted the position of Plaintiff in its denial of Defendants' appeal, concluding that the denial fell within the exception provided by subsection (d) of N.C. Gen. Stat. § 22B-20 because the solar panels at issue were "visible by a person on the

ground on a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces[.]"

## II. Analysis

¶ 33 The plain and unambiguous language of § 22B-20 provides no support for either the narrow proposition that Plaintiff's refusal to approve the installation of Defendants' solar panels falls within the exception created by subsection (d) of the statute, or the broader proposition that the statute does not apply here. Ignoring the plain language of the statute, the majority's holding contravenes the intent of the General Assembly clearly expressed in § 22B-20, relying on a misinterpretation of the statute's legislative history. The majority also construes the Declaration as more restrictive than its terms require. The rule of strict construction that governs the interpretation of restrictive covenants requires the opposite result.

## A. Standard of Review

¶ 34 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019). The burden is on the moving party to "show that there is no triable issue of fact and that he is entitled to judgment as a matter of law. In deciding the motion, all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion."

*Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 391, 594 S.E.2d 37, 40 (2004) (internal marks and citations omitted). We review a trial court's grant of a motion for summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

**B. The Express Terms of N.C. Gen. Stat. § 22B-20**

North Carolina General Statute § 22B-20 provides in relevant part as follows:

> (b)     Except as provided in subsection (d) of this section, any deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector that gathers solar radiation as a substitute for traditional energy for water heating, active space heating and cooling, passive heating, or generating electricity for a residential property on land subject to the deed restriction, covenant, or agreement is void and unenforceable. As used in this section, the term "residential property" means property where the predominant use is for residential purposes. The term "residential property" does not include any condominium created under Chapter 47A or 47C of the General Statutes located in a multi-story building containing units having horizontal boundaries described in the declaration.  As used in this section, the term "declaration" has the same meaning as in G.S. 47A-3 or G.S. 47C-1-103, depending on the chapter of the General Statutes under which the condominium was created.
>
> . . .
>
> (d)     This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground:

> (1)    On the façade of a structure that faces areas open to common or public access;
>
> (2)    On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces; or
>
> (3)    Within the area set off by a line running across the façade of the structure extending to the property boundaries on either side of the façade, and those areas of common or public access faced by the structure.

N.C. Gen. Stat. § 22B-20 (2019).

¶ 36      Accordingly, subsection (b) of § 22B-20 invalidates land use restrictions that prohibit the installation of solar panels on residential property, and also invalidates land use restrictions that *effectively* prohibit the installation of solar panels on residential property without doing so expressly. *Id.* § 22B-20(b) ("[A]ny deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, *or have the effect of prohibiting*, the installation of a solar collector . . . is void and unenforceable.") (emphasis added). I would therefore hold that § 22B-20 applies to Plaintiff's refusal to approve the installation of Defendants' solar panels because subsection (b) of the statute invalidates land use restrictions that have the effect of prohibiting the installation of solar panels on residential property, even if the restriction does not explicitly prohibit solar panels.

¶ 37        Subsection (d) of § 22B-20 provides an exception from subsection (b) for restrictions on surfaces facing common areas that meet certain specified criteria, provided that there is an *existing* "deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors . . . that are visible by a person on the ground[.]" *Id.* § 22B-20(d). I would therefore hold that subsection (d) does *not* provide an exception for a land use restriction that *effectively* prohibits the installation of solar panels unless the restriction appears in a pre-existing "deed restriction, covenant, or similar binding agreement that runs with the land" related to "prohibit[ing] the location of solar collectors . . . visible by a person on the ground[,]" as subsection (d) unambiguously provides. *Id.*

¶ 38        In holding otherwise, the majority ignores the words "have the effect of prohibiting" in subsection (b), *id.* § 22B-20(b), while reading these same words into subsection (d), where they do not exist, *id.* § 22B-20(d). Subsection (d) does *not* provide an exception from subsection (b) for restrictions that effectively prohibit the installation of solar panels on residential property in "deed restriction[s], covenant[s], or similar binding agreement[s] that run[] with the land that would prohibit[, or *have the effect of prohibiting*,] the location of solar collectors[.]" The italicized words in the preceding sentence do not exist in subsection (d). They do, however, exist in subsection (b).

**C. Legislative Intent**

¶ 39    The majority's holding also contravenes the intent of the General Assembly clearly expressed in § 22B-20 and relies on a misinterpretation of the statute's legislative history. I look to the unambiguous words the General Assembly chose to express its intent rather than consulting the legislative history of § 22B-20 to resolve ambiguity where none exists.

¶ 40    The majority correctly notes that the original version of Senate Bill 670—the bill that would become Session Law 2007-279—did not contain subsection (d), and that the title of the bill was changed to include the language "have the effect of prohibiting" after subsection (d) was added. *Belmont Ass'n, Inc. v. Farwig, supra* at ___. I agree that the title of Senate Bill 670 demonstrates that, in the words of the majority, by enacting Session Law 2007-279 "the legislature was specifically addressing agreements that would 'have the effect' of prohibiting the installation of solar collectors." *Id.* at ___. However, I disagree with the majority's assertion that there is any ambiguity between the words, "effect of preventing" in subsection (b), "and the words, 'would prohibit' in subsection (d)." *Id.* at ___.

¶ 41    "The first consideration in determining legislative intent is the words chosen by the legislature." *O & M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 267-68, 624 S.E.2d 345, 348 (2006) (citation omitted). "Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect,

presuming that the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citation omitted).

¶ 42        Reading the words "have the effect of prohibiting" into subsection (d) and out of subsection (b) ignores the deliberate choice made by the General Assembly to use the words "effect of preventing" in subsection (b) of § 22B-20 and *not* in subsection (d), a choice I believe we must presume the legislature carefully made. *See id.* This choice demonstrates that the General Assembly intended for the exception created by subsection (d) to be *unavailable* unless there was an existing "deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors . . . that are visible by a person on the ground[.]" N.C. Gen. Stat. § 22B-20(d) (2019).        The majority ignores this choice and reads the exception to swallow the rule.

¶ 43        Moreover, § 3 of Session Law 2007-279 removes any doubt about the intent of the General Assembly, providing:

> [t]he intent of the General Assembly is to protect the public health, safety, and welfare by encouraging the development and use of solar resources and by prohibiting deed restrictions, covenants, and other similar agreements that could have the ultimate effect of driving the costs of owning and maintaining a residence beyond the financial means of most owners.

S.L. 2007-279 § 3 (codified at N.C. Gen. Stat. § 22B-20(a)).        This provision makes plain that the purpose of the law is to *encourage* the use of solar panels by "prohibiting

deed restrictions, covenants, and other similar agreements that *could have the ultimate effect* of driving the costs of owning and maintaining a residence beyond the financial means of most owners." *Id.* (emphasis added).  The General Assembly is not often so direct and clear about its intent.

¶ 44            In this case, Plaintiff's effective prohibition of the installation of solar panels on street-facing surfaces in Belmont by enforcing an unwritten rule with the authorization of the covenants in the Declaration is a perfect example of a covenant that discourages the use of solar panels and "that could have the ultimate effect of driving the costs of owning and maintaining a residence beyond the financial means of most owners."   N.C. Gen. Stat. § 22B-20(a) (2019).[2]   This scenario—where a delegation of approval by a covenant over certain matters to a body that maintains a practice of prohibiting the installation of solar panels where the covenant itself does not expressly regulate solar panels—is precisely the sort of land use restriction effectively preventing the installation of solar panels that the General Assembly sought to invalidate by enacting Session Law 2007-279.   The covenants in the Declaration authorizing this are "covenant[s] . . . that run[] with the land that . . .

---

[2] As noted previously, N.C. Gen. Stat. § 22B-20 was enacted by the General Assembly in two parts—Session Laws 2007-279 and 2009-553—in 2007 and 2009.  Session Law 2007-279 applied only to detached single-family residences.  *See* S.L. 2007-279.  Session Law 2009-553 expanded the applicability of Session Law 2007-279 to all residential property, defined residential property broadly, and created an exemption for certain multi-unit condominiums.  *See* S.L. 2009-553.

have the effect of prohibiting[] the installation of a solar collector[.]" *Id.* § 22B-20(b). Thus, under § 22B-20(b), these covenants should be "void and unenforceable." *Id.* As shown by the materials submitted in support of Defendants' appeal of their Architectural Request, the Declaration contains covenants "that could have the ultimate effect of driving the costs of owning and maintaining a residence beyond the financial means of most owners." *Id.* § 22B-20(a). The General Assembly gave developers subsection (d) so that if they wanted to create covenants with a limited prohibition of solar panels, they could do so by expressly recording the language of subsection (d) in their restrictive covenants, providing potential buyers with notice of their intention to take advantage of the limited, allowable prohibitions. The Plaintiff in this action failed to take advantage of this safe harbor.

**D. The Rule of Strict Construction**

Finally, the majority also erroneously construes the Declaration as more restrictive than its terms require, violating the rule of strict construction that governs the interpretation of restrictive covenants. I would adopt the least restrictive construction permitted by the terms of the Declaration, reading it to allow Plaintiff and the Committee to deny approval of installations of solar panels proposed by homeowners in Belmont only if there is first recorded "a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location

of solar collectors . . . that are visible by a person on the ground[,]" *id.* § 22B-20(a), and meets at least one of the criteria specified in subsection (d) of § 22B-20.

¶ 46        Generally speaking, while "[r]estrictive covenants are legitimate tools of developers so long as they are clearly and narrowly drawn[,]" *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 735 (2003) (internal marks and citation omitted), they "are not favor[e]d by the law, and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of land[,]" *J.T. Hobby & Son, Inc. v. Family Homes of Wake Cty., Inc.*, 302 N.C. 64, 70, 274 S.E.2d 174, 179 (1981) (internal marks and citation omitted).  Accordingly, "where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted[.]" *McVicker v. Bogue Sound Yacht Club, Inc.*, 257 N.C. App. 69, 77, 809 S.E.2d 136, 141 (2017) (citation and emphasis omitted).  "The rule of strict construction is grounded in sound considerations of public policy:  It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent."  *J.T. Hobby & Son*, 302 N.C. at 71, 274 S.E.2d at 179 (citation omitted).

¶ 47        The majority holds that the Declaration authorizes Plaintiff and the Committee in its "sole discretion to deny the installation of improvements to their property that do not comport with aesthetics or the common scheme of development[,]" ignoring the rule of strict construction.  *Belmont Ass'n, Inc. v. Farwig,*

*supra* at ___. However, because the terms of the Declaration are capable of a construction that limits rather than extends its applicability, I would hold that the rule of strict construction requires that we construe the Declaration "to the end that all ambiguities [] be resolved in favor of the unrestrained use of land." *J.T. Hobby & Son, Inc.*, 302 N.C. at 70, 274 S.E.2d at 179 (citation omitted).

### III.  Conclusion

¶ 48        I would hold that N.C. Gen. Stat. § 22B-20(b) applies to Plaintiff's denial of Defendants' Architectural Request because § 22B-20(b) invalidates restrictions that effectively prohibit the installation of solar panels on residential property, even if those restrictions do not do so expressly. I would hold that Plaintiff cannot avail itself of the exception established by subsection (d) of the statute because subsection (d) requires that the restriction prohibiting the installation of solar panels on surfaces facing public areas actually exist in a prior "deed restriction, covenant, or similar binding agreement that runs with the land[.]" N.C. Gen. Stat. § 22B-20(d) (2019). Finally, I would construe the Declaration in favor of less restriction of the free use of land rather than more, as the rule of strict construction for restrictive covenants requires. I therefore respectfully dissent.